

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0212-21

---

## ELUID LIRA, Appellant

## v.

## THE STATE OF TEXAS

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## JONES COUNTY

---

## NO. PD-0213-21

---

## SCOTT HUDDLESTON, Appellant

## v.

## THE STATE OF TEXAS

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE ELEVENTH COURT OF APPEALS
## JONES COUNTY

---

**NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, WALKER and MCCLURE JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEEL and SLAUGHTER, JJ., joined. YEARY, J., concurred.**

Does the Texas Supreme Court's "Seventeenth Emergency Order Regarding the COVID-19 State of Disaster" authorize a trial court to conduct a plea proceeding via videoconference despite the lack of a defendant's written consent?  No.  We have previously held in *In re Ogg* that the Supreme Court's emergency orders modifying deadlines and procedures could not be used to suspend a party's substantive rights or a procedure that involves a trial court's authority.  The statutory requirement that a defendant consent in writing to a plea proceeding by videoconference is both a substantive statutory right and procedure necessary for the trial court to have the authority to proceed.  As the court of appeals held, it is on par with the written-consent-by-the-State requirement at issue in *Ogg*.  Accordingly, we affirm the court of appeals.

## Background

The State charged both Appellants with second-degree felony assault on a public servant.  The State alleged in Lira's indictment that he had previously been convicted twice for felony possession of a

controlled substance and twice for felony possession of a controlled substance with intent to distribute. The State alleged in Huddleston's indictment that he had previously been convicted for murder. Both Appellants were represented by the State Counsel for Offenders.

Both Appellants reached plea agreements with the State and their cases were set for back-to-back pleas via a "zoom/video-conference plea docket." Prior to the hearing, counsel for Appellants filed identical motions objecting to the trial court's setting the cases for plea hearings via a Zoom videoconference. In the motions, Appellants argued that pleading by videoconference would violate their constitutional right to counsel, right to public trial, and statutory rights under Articles 27.18 and 27.19 of the Code of Criminal Procedure. The State filed identical responses to the motions and argued that the use of Zoom videoconference technology during the hearings would not affect the Appellants' ability to consult with counsel; intrude on confidential communications between Appellants and their attorneys; or restrict the public's access to the proceeding. Ultimately, the State argued that Emergency Orders issued by the Supreme Court of Texas controlled over the Code of Criminal Procedure.

When the day for the videoconference arrived, the trial court heard arguments regarding the Appellants' motions and overruled them.

Appellant Lira was sentenced to eight years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. Appellant Huddleston was sentenced to eight years and a fine of $3,000. The parties agreed that Appellants would retain their right to appeal "on constitutional issues, public trial issues, the 27.18 all of those issues, the right to counsel . . ."

## Appeal

On appeal, the Appellants argued that their statutory right to enter a guilty plea in person in open court was a substantive right. Because of this, it was not subject to the Texas Supreme Court's emergency orders regarding the modification or suspension of deadlines and procedures. The State argued that, if preserved, Appellants' arguments failed because the Texas Supreme Court had the authority to modify or suspend "the act of criminal defendants appearing live in live courtrooms[.]"

The court of appeals agreed with the Appellants.[1]  It held that paragraph 3(c) of the Seventeenth Emergency Order could not require a defendant in a criminal case to appear via videoconference for a plea

---

[1] *Lira v. State*, 630 S.W.3d 439, 442 (Tex. App. – Eastland 2021); *Huddleston v. State*, 630 S.W.3d 436, 439 (Tex. App. – Eastland 2021).

hearing over his objection.[2]   First, the court of appeals cited to this Court's recent decision in *In re State ex. Rel. Ogg*[3] for the proposition that neither Section 22.0035(b) nor the Seventeenth Emergency Order purported to authorize a trial court to modify substantive rights.[4]   Next, it noted that a defendant's rights to appear both in person and in open court are not merely procedural, but substantive rights provided for by statute.[5]   After noting that the conditions set out in Articles 27.18 and 27.19 of the Code of Criminal Procedure had not been met, the court of appeals held that the trial court was not authorized to accept the guilty plea.[6]   Finally, the court of appeals held that the plea was voidable because of the trial court's lack of authorization.[7]

### Petitions for Discretionary Review

In its petition for review to this Court, the State Prosecuting Attorney (SPA) raised one ground: "If a defendant has to accept the

---

[2]  *Lira*, 630 S.W.3d at 441; *Huddleston*, 630 S.W.3d at 438.

[3] 618 S.W.3d 361 (Tex. Crim. App. 2021) (orig. proceeding).

[4] *Lira*, 630 S.W.3d at 442; *Huddleston*, 630 S.W.3d at 438.

[5] *Lira*, 630 S.W.3d at 442; *Huddleston*, 630 S.W.3d at 438 (citing to TEX. CODE CRIM. PROC. arts 1.13, 27.18, and 27.19).

[6] *Lira*, 630 S.W.3d at 442; *Huddleston*, 630 S.W.3d at 439.

[7] *Lira*, 630 S.W.3d at 442; *Huddleston*, 630 S.W.3d at 439 (citing generally *Davis v. State*, 956 S.W.2d 555, 557–58 (Tex. Crim. App. 2012)); *Ogg*, 618 S.W.3d at 365; *Lilly v. State*, 365 S.W.3d 321, 328, 333 (Tex. Crim. App. 2012)).

benefit of a negotiated plea agreement via videoconferencing, has he lost a substantive right or been harmed?"  We note at the outset that the SPA's framing of its issue lacks precision.  This is not a situation in which the Appellants consented to appear via videoconference in exchange for a plea bargain recommendation. Rather, the Appellants objected to the videoconference proceeding and refused to provide written consent to that procedure before formally entering a plea and accepting a plea bargain.  As mentioned above, the parties agreed, and the trial court noted that Appellants would be able to appeal the issue raised in their pre-trial motion.

This is akin to the situation we faced in *Lilly v. State*, in which the defendant objected to the location of a plea-bargain proceeding (claiming it violated his right to a public trial) prior to entering the plea.[8]  In *Lilly,* we rejected the argument that the defendant's public trial claim had been waived by acceptance of the plea bargain.[9]  To the extent that the SPA is arguing that Appellants consented to the videoconference by accepting the plea bargain, we reject that argument just as we rejected the waiver argument in *Lilly.*[10]

---

[8] *Lilly v. State*, 365 S.W.3d 321, 324-25 (Tex. Crim. App. 2012).

[9] *Id.* at 328.

[10] *Id*.

According to the SPA, the overarching question in these cases is whether the right to accept a plea in person rather than by videoconference is a matter of procedure subject to modification during a declared disaster. After noting various models of determining the character of the contested rights in these cases, the SPA argues that this Court held in *In re Ogg* that procedures affecting jurisdiction or authority are not subject to modification by the Supreme Court's Emergency Order. According to the SPA, this case is distinguishable from *Ogg* because the statute at issue does not confer jurisdiction or authority over a particular type of proceeding. Finally, the SPA argues that, even if the trial court was not authorized to suspend the consent requirement, the result was regular trial error subject to non-constitutional harm analysis and the Appellants were not harmed because they "got everything [they] wanted."

In response, the Appellants argue that this case is like *Ogg* because the requirement of written waiver of pleading in person and in open court are procedures that implicate the trial court's jurisdiction or authority in the same way that the procedural requirement that the State consent to a defendant's waiver of a jury trial does. Appellants acknowledge that a trial court does have jurisdiction to accept a defendant's guilty plea, but they argue that Section 22.0035(b) of the

Government Code did not supply it with jurisdiction to suspend their substantive rights to appear in person under Article 27.13. Appellants argue that the failure to comply with these procedures renders a proceeding void but argue in the alternative that if the error is subject to harm analysis, it is subject to analysis for constitutional error because the suspension of Article 27.13 rights violated "federal constitutional due-process principles."

With these arguments in mind, we turn to the question at hand. Does the Texas Supreme Court's "Seventeenth Emergency Order Regarding the COVID-19 State of Disaster" authorize a trial court to conduct a plea proceeding via videoconference despite the lack of a defendant's written consent? Again, no.

## Standard of Review

When we interpret statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation.[11] In so doing, we necessarily focus our attention on the plain text of the statutes and attempt to discern the fair, objective meaning of the text at the

---

[11] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

time of its enactment.[12]  Our duty is to try to interpret the work of our legislature as best we can to fully effectuate the goals they set out.[13]

In interpreting the text of statutes, we presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.[14]  We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts.[15] Accordingly, time-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation.[16] Statutory construction is a question of law that we review *de novo*.[17]

---

[12]  *Id.*

[13] TEX. CODE CRIM. PROC. art. 1.26 ("The provisions of this Code shall be liberally construed so as to attain the objects intended by the Legislature: The prevention, and suppression, and punishment of crime."); *see also*, *e.g.*, TEX. PENAL CODE § 1.05(a) ("The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.").

[14] *State v. Rosenbaum*, 818 S.W.2d 398, 400–01 (Tex. Crim. App. 1991) (citing TEX. GOV'T CODE §§ 311.025(b), 311.026(a)); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

[15] *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021); *see*, *e.g.*, *Murray v. State*, 302 S.W.3d 874, 877–79 (Tex. Crim. App. 2009) (interpreting the phrase "included in the indictment" in Article 4.06 of the Code of Criminal Procedure after considering Articles 37.08 and 37.09 of the Code of Criminal Procedure).

[16] *Watkins*, 619 S.W.3d at 272.

[17]  *Id.* at 273.

## Analysis

To appropriately answer the question in this case, we first set out the underlying statutory authority for the Supreme Court's recent Emergency Orders, the cause of the Emergency Order underlying this case, and the text of the Emergency Order at issue in this case. Second, we discuss our recent opinion in *In re Ogg* and the cases that it relied upon. Third, we discuss the underpinnings of a defendant's substantive statutory right to be personally present during court proceedings. And finally, we set out the textual mechanisms for the waiver of a defendant's right to trial by jury, a defendant's plea of guilty or no contest without a jury, and the mechanisms for a videoconferenced plea proceeding.

Ultimately, we agree with the court of appeals that the trial court had no authority to preside over a videoconferenced plea hearing where the Appellants had not waived in person or in writing their right to be present. As we held in *Ogg*, the Supreme Court's Emergency Orders cannot suspend procedures designed to protect substantive rights, nor can they create authority for a trial court to preside over proceedings over which it has no authority. Under the plain text of the relevant statutes, the trial court would not have had authority to proceed to the videoconferenced plea absent the Appellants' consent. The Supreme

Court's emergency order could not provide a trial court with authority that did not previously exist.

## Texas Government Code Section 22.0035, COVID-19, and the Supreme Court's Seventeenth Emergency Order

In 2009, the Texas Legislature amended the Texas Government Code to add Section 22.0035.[18]  The new section authorized the Texas Supreme Court, notwithstanding any other statute, to modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor:

> (b) Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor. An order under this section may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court.[19]

The new section was spurred by a string of natural disasters that had impacted Texas in the preceding two years.[20]  It sought to address the difficulties that events such as Hurricane Ike posed for courts attempting

---

[18] *See* Acts 2009, 81st Leg., ch. 1281, § 1, eff. June 19, 2009.

[19] TEX. GOV'T CODE § 22.0035(b).

[20] Senate Research Center, Bill Analysis, Tex. H.B. 1861, 81st Leg. at 1 ("Author's / Sponsor's Statement of Intent").

to maintain schedules and meet statutory deadlines.[21]  At base, it sought to acknowledge the "inherent authority" of the Texas Supreme Court, in the event of a declared disaster, "to suspend procedures to conduct any affected court proceeding."[22]  By its own terms, the statute does not authorize the suspension or modification of substantive rights.

On March 4, 2020, the State of Texas reported its first case of COVID-19.[23]  In reaction, Texas Governor Greg Abbott issued a proclamation certifying that "COVID-19 pose[d] an imminent threat of disaster" and declared a state of disaster for "all counties in Texas."[24] Following this, the Texas Supreme Court, in conjunction with this Court, issued its First Emergency Order Regarding the COVID-19 State of Disaster pursuant to Section 22.0035(b) of the Government Code.[25] The Texas Supreme Court has renewed this Order multiple times, with many orders superseding prior orders.[26]

---

[21] *Id.*

[22] *Id.*

[23] *In re State of Texas*, 602 S.W.3d 549, 550 (Tex. 2020).

[24] The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2094–95 (2020).

[25] Supreme Court of Texas, First Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket Nos. 20-9042, 596 S.W.3d 265, 265–66 (Tex. 2020).

[26] *Ogg*, 618 S.W.3d at 364.

On May 26, 2020, the Texas Supreme Court issued its Seventeenth Emergency Order Regarding the COVID-19 State of Disaster (the Emergency Order).[27] The Emergency Order provided, in pertinent part:

> 3. Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must, to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
>> a. except as provided in paragraph (b), modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order for a stated period ending no later than September 30, 2020;
>>
>> b. [addressing proceedings under Subtitle E, Title 5 of the Family Code]
>>
>> c. Allow or require anyone in any hearing, deposition, or other proceeding of any kind— including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means;
>>
>> [ . . . ].[28]

This Emergency Order was in place at the time of both pleas underlying this case.

---

[27] Supreme Court of Texas, Seventeenth Emergency Order Regarding the COVID-19 State of Disaster, Misc. Docket No. 20-9071, 609 S.W.3d 119 (Tex. 2020).

[28] *Id*. at (3)(a-c).

### *In re Ogg* and the Authority it Relied Upon

We have recently held that "[t]he Supreme Court's Emergency Order does not authorize a trial court to preside over proceedings over which the judge would otherwise be barred from presiding."[29]  In *In re Ogg*, a trial court concluded that it could conduct a bench trial despite the State's refusal to consent to the defendant's waiver of his or her right to a jury.[30]  The State sought mandamus relief from this Court, arguing that the Emergency Order merely governed procedures and deadlines and did not "imbue courts with the discretion to selectively ignore the substantive rights and privileges of parties."[31]  We ultimately held that the trial court did not have the authority to preside over a non-jury proceeding without the consent of the State and we conditionally granted mandamus relief.[32]

Notably, we did not regard the requirement at issue in *Ogg*—the State's written consent to the defendant's waiver of a jury trial—as a "substantive right."[33]  Instead, we regarded it as a procedure necessary

---

[29] *Ogg*, 618 S.W.3d at 364.

[30] *Id*. at 362.

[31] *Id*. at 362–63.

[32] *Id.* at 366.

[33] Of course, it would have made no sense to analyze the procedure at issue as a "substantive right" of the State.  The State does not have "substantive rights," particularly not a "right" to

to empower the trial court to proceed to determine the case without a jury. Statutorily, this requirement appears as one of several pre-conditions necessary to affect a defendant's waiver of his or her right to a jury determination of guilt and punishment. Article 1.13 sets out that a defendant's waiver of his right to a jury is only effective if the waiver occurs in person, in writing, and in open court. Moreover, the statute sets out that the procedures for a videoconferenced plea in Article 27.19 are an exception to these statutory requirements. Of course, we did not address in *Ogg* whether the lack of these other pre-conditions for a waiver of a jury deprived the trial court of authority to proceed. However, these pre-conditions are textual equals to the pre-condition that we did consider, namely the statutory requirement that the State provide written consent to a defendant's waiver of his or her personal right to a jury trial.

---

a jury. *State ex. rel Turner v. McDonald*, 676 S.W.2d 371, 373 (Tex. Crim. App. 1984) ("As a matter of "right," the State technically has none to a trial by jury[.]"). As we explained in *State ex rel. Turner v. McDonald*, "[D]ue process and due course of law are guarantees to citizens and not governments or their agents." *Id.* However, we noted in our opinion in *Ogg*, that the Emergency Order, by its own terms, did not authorize the modification of substantive rights. *Ogg*, 618 S.W.3d at 364. And we equated the unauthorized proceeding with the complete abrogation of a defendant's substantive right. *Id.* at 365. Further, the SPA argues that the defendant's written consent requirement at issue here is neither a substantive right nor a procedure affecting the trial court's authority to proceed. Accordingly, we must analyze whether the Emergency Order authorized the abrogation of a substantive right or a procedure affecting a trial court's authority.

In analyzing whether the State's written consent to a defendant's waiver of his or her right to a jury trial was necessary to provide the trial court with authority to proceed without a jury, we started our analysis by looking to the plain text of both Article 1.13 and Government Code Section 22.0035(b).[34] We observed that, "[o]n their faces, neither Section 22.0035(b) nor the Emergency Order purport to authorize courts to modify substantive rights" and only address "procedural matters."[35] We also looked to prior cases where we issued mandamus relief against a trial court attempting to conduct bench trials without the State's consent to the defendant's waiver of a jury.[36]

For example, in *State ex rel. Curry v. Carr*, a trial judge declared his intent to set a case for trial before the court over the State's refusal to consent to the defendant's jury trial waiver.[37] The State sought mandamus relief.[38] We relied on our prior decision in *State ex rel. Turner* for the proposition that the trial court did "not have the discretion to

---

[34] *Id.* at 363–64.

[35] *Id.* at 364.

[36] *Id.* (citing *State ex. Rel. Curry v. Carr*, 847 S.W.2d 561, 561–62 (Tex. Crim. App. 1992) and *In re State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 646–47 (Tex. Crim. App. 2018)).

[37] *Curry*, 847 S.W.2d at 562.

[38] *Id.*

serve as a factfinder in the trial of a misdemeanor case absent the consent and approval of the State as prescribed by Article 1.13 to the accused waiver of jury trial" to grant relief.[39]  Given the circumstances, we held that the trial court had "a ministerial duty to conduct a jury trial."[40]

Similarly, in *Ex parte George*, we dealt with the consequences of a trial court's decision to render a verdict of 'not guilty' in the face of the State's decision to not consent to a jury waiver under Article 1.13(a).[41]  We held that, without the requirements of Article 1.13(a), the trial court's verdict was as proper as if the court bailiff had announced that the defendant was acquitted: "We think it clear that the bailiff's announcement would not be an acquittal in contemplation of law because he is not authorized by law to pass upon the culpability of the accused."[42]  So also, "the trial judge was not authorized by law to pass upon the culpability of the accused."[43]  Ultimately, similar to this case,

---

[39] *Id.* (citing *State ex. Rel Turner v. McDonald*, 676 S.W.2d 371, 371–72 (Tex. Crim. App. 1984).

[40] *Id.*

[41] *George*, 913 S.W.2d at 525.

[42] *Id.* at 527.

[43] *Id*.

the question we faced in *Ogg* was whether the Emergency Order could change that underlying lack of authority.[44]

First, we noted that the language of the Emergency Order "presupposes a pre-existing power or authority over the case or the proceedings."[45] Because of this, we reasoned that, under the Emergency Order, "[a] court may extend a deadline or alter a procedure that would otherwise be part of the court proceedings," but the ability to modify or suspend "procedures" is not a "magic wand that allows a judge to preside over a proceeding over which he is otherwise barred from presiding."[46] To illustrate this conclusion, we noted that it would be "patently absurd" to suggest that the authority to modify statutory deadlines and procedures "would confer upon the trial court the power to abrogate a defendant's statutory right to a jury trial at punishment."[47] While we noted that the Emergency Order stated that it was "subject only to constitutional provisions," we reasoned that this was "still not an

---

[44] *Ogg*, 618 S.W.3d at 365.

[45] *Id.*

[46] *Id.* at 364–65.

[47] *Id.* at 365.

explicit statement that courts and judges have the ability to enlarge their jurisdiction and authority over proceedings."[48]

Then, we held that the trial court did not have the authority to conduct a bench trial without the State's consent pursuant to Article 1.13, and the Emergency Order did not change that fact.[49]  We concluded that the consent requirement was not merely procedural but implicates the trial court's authority to preside over a particular type of proceeding.[50]  In reaching this conclusion, we referenced cases that held that a trial court's lack of authority to preside over a hearing invalidated the proceeding itself, and that indicated that a judgment from such a proceeding was a nullity for double jeopardy purposes.[51]

Significantly, we equated the abrogation of the procedural requirement of the State's written consent to a jury-trial waiver to the abrogation of a defendant's right to a jury trial at punishment.  As we explained, "[i]t seems—and is—patently absurd that a generically framed right to modify statutory deadlines and procedures would confer

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* (citing *Davis*, 956 S.W.2d at 557–58 and *George*, 913 S.W.2d at 525).

on the trial court the power to abrogate a defendant's statutory right to a jury trial at punishment."[52]  Accordingly, we held that the trial judge could not use the Emergency Order's authorization to hold a bench trial without the State's consent because that would amount to the trial judge conferring "authority upon himself."[53]

Notably, the Emergency Order at issue in *Ogg* purported to authorize proceeding without the consent of the participants.[54]  While it is easy to overlook that a non-corporeal entity such as the "State" is still a "participant" in the proceedings, it nonetheless is.  And proceeding without a jury trial (even when a defendant is willing to waive his right to one) would have furthered the stated goal of the Emergency Order to "avoid the risk" of subjecting countless jurors and potential jurors to possible COVID infection.  Nevertheless, we held in *Ogg* that the trial court lacked authority to proceed to a bench trial despite the lack of one participant's consent even though the Emergency Order specifically authorized proceeding without the consent of either or both participants.[55]  With this understanding of *Ogg* in mind, we consider the

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at 364.

[55] *Id*. at 365.

question of whether modification of procedures surrounding a plea bargain abrogated the substantive rights of the Appellants or granted the trial court authority where none existed. We conclude that it did both.

## The Right to be Present

"A leading principle that pervades the entire law of criminal procedure is that, after indictment, nothing shall be done in the absence of the prisoner."[56] The personal presence of the defendant is essential to a valid trial and conviction on a charge of felony, if he is absent, will be set aside.[57] This common law requirement was premised on the notion that a fair trial could take place only if the jurors met the defendant face-to-face and only if those testifying against the defendant did so in his presence. As the Supreme Court of the United States observed, "[i]t was thought 'contrary to the dictates of humanity to let a prisoner 'waive that advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defence [sic]

---

[56] *Lewis v. United States*, 146 U.S. 370, 372 (1892).

[57] *Crosby v. United States*, 506 U.S. 255, 259 (1993).

with indulgence.'"[58]  The United States Supreme Court has recognized that the right to be present in the courtroom at every stage of trial is guaranteed by the Confrontation Clause of the Sixth Amendment.[59]  It is also based in the Due Process Clauses of the Fifth and Fourteenth Amendments and applies at any stage of the criminal proceeding that is critical to its outcome, "if the defendant's presence would contribute to the fairness of the procedure."[60]

The plea proceeding is a stage at which a defendant's presence is critical to the outcome.  As the United States Supreme Court noted of plea proceedings,

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.  First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the

---

[58] *Id.* (citing F. Wharton, *Criminal Pleadings and Practice* 392 (9th ed. 1889) and 1 J. Bishop, *New Criminal Procedure* 178 (4th ed. 1895 quoting *Prine v. Commonwealth*, 18 Pa. 103, 104 (1851)), *see also Prine*, 18 Pa. at 104 ("It is undoubtedly error to try a person for felony in his absence, even with his consent. It would be contrary to the dictates of humanity to let him waive the advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defence with indulgence. Never has there heretofore been a prisoner tried for felony in his absence. No precedent can be found in which his presence is not a postulate of every part of the record. He is arraigned at the bar; he pleads in person at the bar; and if he is convicted, he is asked at the bar what he has to say why judgment shall not be pronounced against him. These things are matter of substance, and not peculiar to trials for murder: they belong to every trial for felony at the common law, because the mitigation of the punishment does not change the character of the crime.").

[59] *Illinois v. Allen*, 397 U.S. 337, 338 (1970).

[60] *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

Fourteenth.  Second, is the right to trial by jury.
Third, is the right to confront one's accusers.[61]

These rights remain in place prior to a plea of guilty, and, therefore, a defendant necessarily has a right to be present at the plea hearing as part of his right to confront his accusers and his due process right to be present at any stage of the criminal proceeding.[62]

We have also noted that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom during his trial."[63]  We have relied upon Supreme Court precedent to recognize that the right to be present is largely based on the Confrontation Clause, although it has a due process component.[64]  Intermediate courts of appeals have recognized a constitutional right to be present as well.[65]  As we stated in *Miller v.*

---

[61] *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (internal citations omitted).

[62] It is worth noting that even if there is a plea-bargain agreement, the trial court is under no obligation to accept that agreement.  If the trial court rejects the plea bargain agreement, the defendant may withdraw his or her plea of guilty.  *See Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009).

[63] *Garcia v. State*, 149 S.W.3d 135, 140 (Tex. Crim. App. 2004).

[64] *Ex parte Miles*, 26 S.W.3d 910, 915 (Tex. Crim. App. 2000) (citing *United States v. Gagnon*, 470 U.S. 522 (1985)).

[65] *See, e.g., Monreal v. State*, 546 S.W.3d 718, 733 (Tex. App. —San Antonio, 2018, pet. ref'd.) ("Both the United States Constitution and the Texas Constitution require any defendant threatened with the loss of liberty to be physically present at all phases of the criminal proceedings against him."); *Sanchez v. State*, 702 S.W.2d 258, 259 (Tex. App—Dallas 1985, pet. ref'd.) (noting that a criminal defendant has a fundamental right to be present at every stage of his trial).

*State*, "'[W]ithin the scope of the right of confrontation is the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct.'"[66] Physical presence is personal to the accused and cannot be disregarded or ignored by the courts without affirmative action or assent by the accused.[67]

Our legislature has made clear that a trial court simply lacks authority to enter a felony conviction unless a defendant appears in person and in open court to enter his plea and validly waives his rights. Article 27.13 of the Code of Criminal Procedure makes clear that if a defendant wishes to plead 'guilty' or 'nolo contendre,' that plea must be made "in open court by the defendant in person":

> A plea of "guilty" or a plea of "nolo contendere" in a felony case **must be made in open court by the defendant in person**; and the proceedings shall be as provided in Articles 26.13, 26.14, and 27.02.  If the plea is before the judge alone, same may be made in the same manner as is provided for by Articles 1.13 and 1.15.[68]

---

[66] *Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985) (quoting *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979) (internal citations omitted)).

[67] *Baltierra*, 586 S.W.2d at 556.

[68] TEX. CODE CRIM. PROC art. 27.13 (emphasis added).

Article 1.15 specifically prohibits a trial judge from convicting a defendant of a felony unless the defendant appears "*in open court in person*" to waive his right to a jury:

> No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, **has in open court in person** waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14 [ . . . ][69]

Both statutes establish a statutory requirement that the defendant be present in person and in open court to enter a plea of guilty.[70]  Finally, article 33.03 sets out that a defendant must be personally present in all felony cases as well as any misdemeanor cases in which any part of the punishment includes imprisonment in jail:

> In all prosecution for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail; provided however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.  When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of evidence to the contrary that he was present

---

[69] TEX. CODE CRIM. PROC art. 1.15 (emphasis added).

[70] *See* TEX. CODE CRIM. PROC arts. 1.15, 27.13.

during the whole trial.  Provided, however, that the presence of the defendant shall not be required at the hearing on the motion for new trial in any misdemeanor case.[71]

In *Miller* we acknowledged that a defendant may waive his right to be present during trial, but we interpreted this statutory section to mean that a defendant's right to be present is unwaivable prior to jury selection.[72]  Though *Miller* only considered whether the right to be present was unwaivable before jury selection, the same logic would seem to apply to the other pre-condition in the statute, "pleading to the indictment or information."  But even if we were to distinguish *Miller* on that basis, the statutory language in Article 33.03 further supports the conclusion that a defendant has a substantive right to personal presence that must be waived before a trial court is authorized to proceed remotely.

And the Code of Criminal Procedure also contains separate references to "in person" status versus appearance via electronic means in non-plea contexts, demonstrating that the legislature's use of the statutory phrase "in person" does not include an appearance by

---

[71] TEX. CODE CRIM. PROC. art. 33.03.

[72] *Miller*, 692 S.W.2d at 91.

electronic means.[73]   For instance, Article 15.17(a) mandates that an

"arrested person may be taken before the magistrate *in person* or *the*

*image of the arrested person may be presented to the magistrate by*

*means of a videoconference.*"[74]   In addition, Article 43.03 allows a

defendant to appear in a hearing on confinement for defaulted payments

of a fine "*in person* or *by means of an electronic broadcast system*[.]"[75]

We cannot overlook the legislature's obvious textual

determinations.  Whether because of concern for the constitutionality of

remote plea proceedings without the defendant's consent[76] or because

of some other policy determination left squarely to the legislature,[77] the

legislature has made its intent plain through text, and we must accord

it respect.[78]   Accordingly, we cannot read references to a defendant's

---

[73] *See, e.g.*, TEX. CODE CRIM. PROC. arts. 15.03(c), 15.17(a), 17.292(j), 43.03(f), 45.0201, 45.046(c), and 63.004(b).

[74] TEX. CODE CRIM. PROC. art. 15.17(a) (emphasis added).

[75] TEX. CODE CRIM. PROC. art. 43.03(f) (emphasis added).

[76] *See, e.g.*, *People v. Stroud*, 208 Ill.2d 398, 281 Ill.Dec. 545, 804 N.E.2d 510 (2004) (holding that "a defendant's physical presence at a guilty plea proceeding is constitutionally required unless he consents to having the plea taken by closed-circuit television.").

[77] *See Vandyke v. State*, 538 S.W.3d 561, 569 (Tex. Crim. App. 2017) ("We are not empowered to substitute what we believe is right or fair for what the Legislature has written, even if the statute seems unwise or unfair.").

[78] *Id.* ("When we interpret statutes, our duty is to determine and give effect to the apparent intent of the legislators who voted on it [ . . . ] If we only defer to the legislature when we agree with their policy determinations  then we are not deferring to the legislature at all.").

"in person" status as anything other than a substantive guarantee of personal presence prior to pleading.

Given this backdrop, we agree with the court of appeals that a defendant has at least a substantive statutory right to appear in person in open court for a guilty plea hearing.[79] While we acknowledge that a defendant can voluntarily waive that right after he or she pleads to the indictment or information, this is not a case involving such a waiver. Appellants affirmatively objected to proceeding via videoconference without their consent. Moreover, we are only asked to determine whether the right to be personally present exists as part of the resolution of the question of whether the Appellants had substantive rights that could not be abrogated by the Emergency Order. As we noted in *Ogg*, it would be patently absurd to regard a generically framed order authorizing the modification of statutory deadlines and procedures as conferring upon a trial court the power to abrogate a defendant's statutory right to a jury trial at punishment.[80] It is equally absurd to regard the same Emergency Order at issue in *Ogg* as conferring upon a

---

[79] *Lira*, 630 S.W.3d at 442; *Huddleston*, 630 S.W.3d at 439.

[80] *Ogg*, 618 S.W.3d at 365.

trial court the power to abrogate a defendant's statutory right to be personally present in open court to enter his plea.

### Videoconference Plea Hearings and the
### Waiver of the Right to a Jury

Not only does a defendant have a substantive right to be present in order to waive his rights and enter his plea, the Code of Criminal Procedure also requires a defendant's personal presence as a procedural requirement for the trial court's authority to proceed without a jury. The default proceeding for resolution of a criminal charge is trial by jury.[81] Our state Constitution mandates: "[t]he right of trial by jury shall remain inviolate."[82] Our Code of Criminal Procedure repeats this mandate verbatim.[83] The Constitution further mandates: "[t]he Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency."[84]

As set out above, our legislature, made clear that a trial court simply lacks authority to enter a felony conviction unless a defendant appears in person and waives his rights in full compliance with the

---

[81] *See* TEX. CONST. art. I, § 15.

[82] *Id*.

[83] TEX. CODE CRIM. PROC. art. 1.12.

[84] TEX. CONST. art. I, § 15.

statutes that set out the conditions for a valid waiver. Article 1.15 requires that a defendant who wants to shift from the baseline of a trial by jury must waive his right to a jury "*in open court in person.*"[85] If this waiver of right to trial by jury is made in order to plead 'guilty' or 'nolo contendre,' the legislature mandates that the plea be made "in open court by the defendant in person".[86] Both statutes establish a statutory requirement that the defendant be present in person and in open court.[87]

In addition, both cite to required compliance with Article 1.13 if the defendant is waiving his right to jury and appearing solely before the Judge.[88] Article 1.13, in turn, requires the defendant's jury waiver to be made in person and in open court "except as provided by Article 27.19":

> The defendant in a criminal prosecution for any offense other than a capital felony case in which the state notifies the court and the defendant that it will seek the death penalty shall have the right, upon entering a plea, to waive the right of trial by jury, **conditioned, however, except as provided by Article 27.19, the waiver must**

---

[85] Tex. Code Crim. Proc. art. 1.15 (emphasis added).

[86] Tex. Code Crim. Proc. art. 27.13 (emphasis added).

[87] *See* Tex. Code Crim. Proc. art. 1.15, 27.13.

[88] *See* Tex. Code Crim. Proc. art. 1.15, 27.13.

**be made in person by the defendant in writing in open court** with the consent and approval of the court, and the attorney representing the state.[89]

Accordingly, such a waiver of right to jury and entry of a guilty or no contest plea must be made by the defendant "in person," "except as provided by Article 27.19."[90]  Article 27.19, in turn, authorizes a trial court to accept a plea of guilty or no contest for an incarcerated defendant if the plea is made "in accordance with the procedure established by Article 27.18":

> Notwithstanding any other provision of this code, a court shall accept a plea of guilty or nolo contendere from a defendant who is confined in a penal institution if the plea is made:
>
> **(1) in accordance with the procedure established by Article 27.18**; or
>
> (2)   in writing, including a writing delivered by United States mail or secure electronic or facsimile transmission, before the appropriate court having jurisdiction in the county in which the penal institution is located, provided that:
>
>> (A) the defendant is notified by the court of original jurisdiction of the right to counsel and the procedures for requesting appointment of counsel, and is provided a reasonable

---

[89] TEX. CODE CRIM. PROC. art. 1.13(a) (emphasis added).

[90] *See* TEX. CODE CRIM. PROC. arts. 1.15, 1.13(a), 27.13.

> opportunity to request a court-appointed lawyer;
>
> (B) if the defendant elects to proceed without counsel, the defendant must waive the right to counsel in accordance with Article 1.051;
>
> (C) the defendant must waive the right to be present at the taking of the plea or to have counsel present, if the defendant has counsel; and
>
> (D) if the defendant is charged with a felony, judgment and sentence are rendered in accordance with the conditions and the procedure established by Article 42.14(b).[91]

Article 27.19(a) sets up only two methods of waiving the right to jury trial and entering a plea of guilty or no contest for an incarcerated defendant who is not present in person in open court: (1) a plea in accordance with Article 27.18 or (2) a plea in absentia precipitated by a defendant's written waiver of his rights after sufficient notice of those rights. Following the statutory trail, Article 27.18, in relevant part, requires:

> (a) Notwithstanding any provision of this code requiring that a plea or a waiver of a defendant's right be made in open court, a court may accept the plea or waiver by broadcast by closed circuit video conferencing to the court if:

---

[91] TEX. CODE CRIM. PROC. art. 27.19(a) (emphasis added).

**(1) the defendant and the attorney representing the state file with the court written consent to the use of closed-circuit video tele-conferencing;**

(2) the closed-circuit video teleconferencing system provides for a simultaneous, compressed full motion video, and interactive communication of image and sound between the judge, the attorney representing the state, the defendant, and the defendant's attorney; and

(3) on request of the defendant, the defendant and the defendant's attorney are able to communicate privately without being recorded or heard by the judge or the attorney representing the state.[92]

The legislature created an entire statutory scheme to accommodate a defendant who desired to waive his right to jury other than "in person."[93]

Even viewing the statutory requirement that a defendant appear "in person" as a mere procedural requirement, that procedural requirement is a prerequisite to a valid waiver of a defendant's substantive right to a jury trial. As we held in *Ogg*, without a valid waiver of the defendant's right to a jury trial (even when a defendant seeks to waive that right), the trial court has no authority to proceed

---

[92] TEX. CODE CRIM. PROC. art. 27.18(a) (emphasis added).

[93] *See* TEX. CODE CRIM. PROC. arts. 1.13(a), 27.19(a), and 27.18(a).

without a jury.[94]   As mentioned above, the requirements that a defendant must either waive his right to a jury trial in person, in writing, and in open court or consent in writing to a videoconferenced plea are textually equal to the requirement that the State accept that wavier in writing.   If the State's written consent to a defendant's waiver of a jury trial is a procedure necessary to establish a trial court's authority to proceed to a bench trial, so is the defendant's written consent to waive his personal right to a jury trial and proceed to a plea proceeding via videoconference.

## The Emergency Order Could Not Abrogate Substantive Rights Or Create Authority Where None Existed

The SPA argues that the Appellants' personal presence at their plea hearings was neither a substantive right nor a procedure affecting the trial court's authority to proceed.   As discussed, above, it is actually both.   As we noted in *Ogg*, "neither Section 22.0035(b) nor the Emergency Order purport to authorize courts to modify substantive rights."[95]   The Emergency Order simply could not abrogate Appellants' substantive statutory right to be present in person in open court.   Failing

---

[94] *Ogg*, 618 S.W.3d at 365.

[95] *Ogg*, 618 S.W.3d at 364.

to secure Appellants' written consent resulted in the abrogation of the Appellants' substantive statutory right to be present.

Further, like its effect on the State's consent requirement in *Ogg*, the Emergency Order did not grant the trial court the authority to proceed without a jury absent the Appellants' written consent. While *Ogg* acknowledged that a court could "extend a deadline or alter a procedure that would otherwise be part of the court proceedings," it also made clear that the Emergency Order could not expand a trial court's authority and allow a court to preside over a proceeding that it did not yet have authority to preside over.[96] In this case, as in *Ogg*, the trial court had no authority to proceed, and the Emergency Order could not provide that authority.

First, while Article 27.18 says that a trial court may conduct a plea hearing remotely, the trial court's authority is still conditioned on the defendant's consent.[97] Absent the requirements in 27.18(a)(1-3), the trial court simply does not gain the discretionary authority to hold the remote proceeding.[98] Like the State's consent requirement in *Ogg*, the

---

[96] *Id*.

[97] TEX. CODE CRIM. PROC. art. 27.18.

[98] *See Ogg*, 618 S.W.3d at 365; TEX. CODE CRIM. PROC. art. 27.18; *see also East v. State*, 48 S.W.3d 412, 414 (Tex. App. – Houston [14th Dist.] 2001, no pet.).

consent requirement under 27.18 is the type of procedure necessary to authorize the trial court to proceed.[99] While the Emergency Order purported to allow a trial court to require any party to participate remotely in any hearing, under our holding in *Ogg*, it did not grant the trial court authority to preside over a proceeding that it otherwise would have been barred from presiding over.[100]

Second, the Appellants' lack of in-person presence deprived the trial court of authority to accept the Appellants' jury waiver and guilty pleas at all, and the Emergency Order did not change that. A trial court only gains authority to preside over a non-jury resolution to a criminal case when the requirements of Article 1.13(a) are met.[101] As we have repeatedly held, the trial court has no discretion to resolve the issue of the defendant's guilt in any manner but by a jury trial unless the trial court complies with Art. 1.13(a).[102] In addition, a trial court cannot

---

[99] *See Ogg*, 618 S.W.3d at 364.

[100] *Id.*

[101] *See* TEX. CODE CRIM. PROC. art. 1.13(a); *see e.g.*, *Mau*, 560 S.W.3d at 646 ("By the time the jury returned a guilty verdict, Rivera had not waived his right to a jury trial, and the State had not consented (in writing or otherwise) to such a waiver. We agree that the trial court *was without authority to enter an order deferring adjudication of guilt*—the action that provoked the State's objection in this case.") (emphasis added).

[102] *See, e.g.*, *George*, 913 S.W.2d at 526 ("Accordingly, if we consider the question presented as a matter of the judge's authority, not of the court's jurisdiction, it is apparent that the judge in this case did not have authority to acquit the appellant."); *Turner*, 676 S.W.2d at 374 ("We hold Respondent does not have the discretion to serve as factfinder in the trial of a felony case absent the consent of the State as prescribed by Article 1.13, supra, to the

accept a plea of guilty or no contest in a felony case under Article 27.13 when the requirements of Article 1.13 have not been met.[103]

While the requirement of 1.13(a) at issue in *Ogg* and its underpinning cases was the consent of the State, it is not the only requirement in 1.13(a) whose absence would block the trial court's authority to proceed to a non-jury proceeding. As we have discussed earlier, this is especially true given the heavy legislative emphasis, throughout the Code of Criminal Procedure, on the defendant's "in person" rather than consented-to videoconferenced presence. In fact, the requirement that a defendant's waiver of a jury trial be made "in person" is the first in a long list of requirements that "must" be satisfied for there to be a valid jury waiver.[104] In addition, the base line requirements of a defendant being "in person" and "in open court" are

---

accused's waiver of right to jury trial. Indeed, under the circumstances presented, Respondent has a ministerial duty to conduct a jury trial."); *Curry*, 847 S.W.2d at 562 ("We hold Respondent does not have the discretion to serve as a factfinder in the trial of a misdemeanor case absent the consent and approval of the State as prescribed by Art. 1.13(a), supra, to the accused's waiver of jury trial. Under the circumstances presented, Respondent has a ministerial duty to conduct a jury trial."); *Mau*, 560 S.W.3d at 646 ("Absent the consent of the State as prescribed by Article 1.13 of the Code of Criminal Procedure, the trial court had no discretion to resolve the issue of Rivera's guilt in any manner but by a jury trial.").

[103] *See* TEX. CODE CRIM. PROC. art. 27.13 ("A plea of 'guilty' or a plea of 'nolo contendere' in a felony case must be made in open court by the defendant in person; and the proceedings shall be as provided in Articles 26.13, 26.14, and 27.02. *If the plea is before the judge alone, same may be made in the same manner as is provided for by Articles 1.13 and 1.15.*") (emphasis added).

[104] *See* TEX. CODE CRIM. PROC. art. 1.13(a) (". . . except as provided by Article 27.19, the waiver must be made in person by the defendant . . . ").

repeated three separate times in three separate mandatory and interrelated statutes.[105] And any departure from this requirement is specifically addressed by two additional heavily-detailed and consent-centric statutes.[106] To read the "in person" requirement as anything other than a legislatively-created block to the trial court's authority to proceed would be to essentially nullify Articles 27.19 and 27.18.

Accordingly, the trial court was not authorized to proceed without a jury because the written consent requirement of Article 27.18(a)(1) was not met. This is because the lack of consent to the videoconference led to Article 27.18 not being met, which in turn led to Article 27.19 not being met, which, combined with the lack of in-person presence, led to Article 1.13(a) not being met. Article 1.13(a) not being met, in turn, resulted in the only valid factfinder being a jury under Article 1.15 and the only valid plea being in person before a jury under Article 27.13.

This is similar to prior situations where we have held that the lack of a defendant's presence affected a court's jurisdiction and authority.[107]

---

[105] *See* TEX. CODE CRIM. PROC. arts. 1.15, 1.13, 27.13.

[106] *See* TEX. CODE CRIM. PROC. arts. 27.19(a), 27.18(a).

[107] *See, e.g.*, *Casias v. State*, 503 S.W.2d 262, 265 (Tex. Crim. App. 1973) ("If the sentence was insufficient where it failed to reflect that the defendant was present, then A fortiori where the instrument affirmatively states the defendant was Not present, the appeal must be dismissed for want of a proper sentence [sic]."); *see also Mennis v. State*, 493 S.W.2d 799, 800–01 (Tex. Crim. App. 1973) (in a case where the record did not reflect that the defendant

For instance, in *Casias v. State*, we noted that the statutory definition of a 'sentence' included a requirement that it be made "in the presence of the defendant."[108] We then went on to hold that, even if a defendant had waived his right to be present at sentencing, a sentence rendered outside of the defendant's presence was "no sentence at all."[109] Because "[p]ronouncement of sentence is jurisdictional for an appeal to this court," we held that the lack of a proper sentence required the appeal to be dismissed.[110] Here, the governing statute similarly requires a defendant's presence (either in person or through Article 27.19) as a condition to the proper waiver his right to trial by jury.[111] Without fulfillment of that condition, the waiver was not proper and the trial court had no authority to preside over anything but a trial by jury.

The State argues that we should hold that any error in proceeding without Appellants' personal presence (or without a written consent to presence via videoconference) is subject to a harmless error analysis.

---

was present when the sentence was imposed, holding that "[f]or the reason that the sentence in this record is insufficient, the appeal will be dismissed.").

[108] *Casias*, 503 S.W.2d at 263.

[109] *Id.* at 265.

[110] *Id.*

[111] *See* TEX. CODE CRIM. PROC. art. 1.13.

The State's point is well taken. We have held before that no error, except those labeled as structural error is categorically immune to a harm analysis.[112] We acknowledge that there are cases in which we have held that lack of compliance with Article 1.13 can be harmless.[113] But those cases involved situations in which there was at least consent as a matter of fact even if the appropriate form of consent was not present in the record. Here, the Appellants did not consent in fact to proceed via videoconference.[114] The error was not merely the failure to file the appropriate paperwork. Proceeding without securing Appellants' consent abrogated Appellants' substantive statutory right to be present.

Moreover, these cases pre-date *Ogg*. In *Ogg* we went beyond saying that the lack of written consent to a jury waiver meant that the trial court had a ministerial duty to empanel a jury. We equated the trial court's lack of authority to proceed to the abrogation of a defendant's substantive statutory right.[115] And by casting the State's

---

[112] *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

[113] *Johnson v. State*, 72 S.W.3d 346 (Tex. Crim. App. 2002) (holding that trial court's failure to obtain written jury waiver from defendant was harmless error); *Garza v. State*, 77 S.W.3d 292 (Tex. Crim. App. 2002) (remanding for consideration of harm in light of *Johnson*).

[114] Appellants requested a continuance in their respective motions to rescind the orders setting their cases on the video-conference plea docket and objected to proceeding remotely. In a separate letter to the trial court, Appellants noted the risk and spread of COVID-19 within the prisons as support for their motion to rescind the order, but they never consented to proceed remotely.

[115] *Ogg*, 618 S.W.3d at 365.

written consent to a jury waiver as a procedure necessary for the trial court's authority to proceed, we necessarily cast the textually equal requirements (such as a defendant's written consent to proceed remotely) as necessary for the trial court's authority.  As we recognized in *Ogg*, "a judge's lack of authority to preside over a proceeding can, depending on the reason for that lack of authority, invalidate the proceeding itself."[116]  And, as we recognized in *Ex parte George*, where a trial court has no authority to act as the fact-finder, his finding of fact as to the defendant's culpability "has no more legal effect than such a finding by any other unauthorized person or entity would have."[117]  And finally, Article 1.15 makes clear that no person can be convicted of a felony unless by a jury verdict or when the requirements for a jury waiver have been met.[118]  As we have described above, the trial court was not authorized to accept Appellants' guilty pleas and proceed without a jury because it lacked authority to preside over the case

---

[116] *Id.*  The reason for the lack of authority in *Ogg* is the same one in this case, the lack of a valid waiver of a jury trial.

[117] *George*, 913 S.W.2d at 527.

[118] TEX. CODE CRIM. PROC. art. 1.15.

without a valid waiver of Appellants' respective rights to a jury trial.[119] Accordingly, the court of appeals was correct to find those pleas voidable.

We are mindful that trial courts should embrace the use of technology to resolve cases more efficiently and increase transparency in the proceedings. Nothing in this opinion should be interpreted as preventing a trial court from proceeding remotely when there is a valid waiver of a defendant's right to be personally present when pleading guilty pursuant to a plea bargain. Neither should our holding be misinterpreted as prohibiting the participants from negotiating a waiver of the right to be present as part of a plea bargain agreement. Those are not the circumstances of this case.

## Conclusion

This case boils down to the simple question of whether the Supreme Court's Emergency Order granted a trial court authority to preside over videoconferenced plea hearings when the Appellants had not consented. We conclude that it does not. A trial court has no authority to hold a videoconferenced plea hearing when the defendant

---

[119] *Ogg*, 618 S.W.3d at 365-66 ("It seems—and is—patently absurd that a generically framed right to modify statutory deadlines and procedures would confer on the trial court the power to abrogate a defendant's statutory right to a jury trial as punishment.").

has not consented.  As we held in *Ogg,* the Texas Supreme Court's Emergency Order cannot grant authority where none exists. Accordingly, we will affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

Filed: January 11, 2023

Publish